Good morning. My name is John Padas. I'm here for Mr. Reyes. May it please the court. The changes circuit precedent, specifically Velasco, with respect to the divisibility of Illinois's aggravated battery statute. What I'd like to do is start with a brief rundown of the procedural history, then go into why I believe Mathis changes the law, discuss Velasco a bit, and then discuss the two state cases that the parties have put before the court, Diaz and Cherry. Finally, concluding with the reason why I believe that the statute is not divisible and why I believe that there was one. Mathis not only reiterated that elements are what count when a court looks to a statute that contains alternative methods or means, it also gave the court a method for determining when alternatives are elements versus means. And that is the new law of Mathis that causes this court to revisit many of its prior decisions, and in this particular case, Velasco. In Velasco, this court was looking at the Illinois aggravated battery statute, and it noted that the statute was overbrought. Specifically, it contained a subsection that prohibited offensive touching, and it said that that was a statute outside of the use of force provision in the sentencing enhancement. Well, counsel, didn't the Illinois court hold that you had to prove deadly weapon as an element of the crime? I do not believe that it held that you had to prove deadly weapon. Deadly weapon is an aggravator that allows the sentence or the conviction for aggravated battery, but it is a list or one of many aggravators that can be proven. For example, and I assume you're referring to the Diaz court. The Diaz court, in Diaz, Mr. Diaz was charged under two particular subsections of the statute, one causing great bodily harm and the other requiring the use of a weapon. Both of those charges were submitted to the jury, and the jury was not required to be unanimous as to either charge. What Mathis tells us is that when a jury is not required to be unanimous as to one of the alternatives, that alternative is not an element, and that's how Mathis changed things. Diaz is a case that cites to Travis Travis is an Illinois Supreme Court case in which a gentleman was charged basically with four different manners and means of committing murder. He was charged with committing it knowingly, intentionally, recklessly, and through felony murder. There was no jury unanimity charge, and he complained on appeal. The Travis court said unanimity is not necessary. That holding was cited later by the Supreme Court in Shad. Shad was a plurality opinion, and the plurality opinion specifically noted Travis as being part of a line of cases in state courts regarding the Sullivan rule. The Sullivan rule allows murder convictions on more than one alternative theory when they could be committed through felony murder or through premeditated murder. So getting back to the change that Mathis caused and the method in particular that it provided, Mathis tells us to look to state court law to find out if state court law definitively answers the question of manners versus means. Diaz does that. The government proposes Cherry as an alternative, and notably they do not discuss Diaz a single bit in their briefing. Cherry is an interesting case. In Cherry, the defendant was charged or involved in a parking lot altercation where he ended up shooting another individual. He was charged with armed violence, which was predicated on aggravated battery causing great bodily harm, and he was charged with aggravated battery with a firearm. Those two charges arise from separate statutes. The statute before the court today is not the same statute that was before the court in Cherry. Specifically, aggravated battery causing great bodily harm was section 12-4A, and aggravated battery with a firearm, which required discharge, was 12.42. These were the 2010 versions of the Illinois statute. Well, he was convicted of using a deadly weapon, and it was a deadly weapon. He was convicted, Judge, of aggravated battery with a firearm, and he was convicted of armed violence, and his complaint was that his conviction for armed violence had an exception that allowed him to get out from under the statute because aggravated battery required, or aggravated battery with a firearm, had a firearm involved. But what the court said is, no, you're talking about two different statutes. At that time, aggravated battery had one set of subsections, and separate and apart was aggravated battery with a firearm. One or two years later, after the case, I believe it was July of 2011, the Illinois legislature aggregated a number of aggravated battery statutes, including the aggravated battery with a firearm statute. Well, let me look at that statute with you as your client was charged. We need the underlying battery, and the underlying battery here that was proven is that he caused bodily harm, and we know that that would satisfy what, at least as the predicate nature of a battery, necessary for using this enhancement guideline. He then was charged under 3.05 F1, however that would be, the numbering system would be said, which is this list that you're talking about, but it's the current list, at least the list at the time that your client was charged, may have been changed again, and that is a specific, narrow, particular F1 that says with a weapon, a deadly weapon, or whatever it says. I don't have that in front of me. It seems to me when you look at Mathis, when you look at the list of things that Mathis says we are to examine to determine whether this in fact is an element versus a means, the last thing it says to look at are the documents themselves, the charging instrument. It seems to me this indictment makes it clear that he has been charged not with things that jury would not have to be unanimous on. They have to be unanimous on him causing great bodily harm. They have to be unanimous on him using a deadly weapon, too wit, a machete. Why isn't that sufficient on a Mathis? I don't know that that is true, that they had to be unanimous with respect to him using a deadly weapon. What other option under the indictment would there have been? It would be sufficient for them to find that he caused bodily harm and that an aggravator, the weapon, was used. If the state had decided to, for example, as referenced by in the Steele case, if the state had decided to add another subsection, the jury would not have been required to find unanimity on the deadly weapon subsection. For example, if he wore a hood while he was swinging a machete, six could believe he wore a hood and didn't swing a machete, and six could believe he swung a machete. So you're talking about speculating what could have happened, but that did not happen in this case, and that's not how he was charged. That's not how the jury was charged, was it? That's not how he was charged, but the statute that he was charged under was not divisible, and because it was not divisible, the court cannot go behind the elements. Well, what does Mathis mean then when it says when you finish looking at the statute, you can also look at the documents on the conviction itself? What does that part of Mathis mean? It means something when state court decisions do not definitively answer the jury unanimity question, and what we argue and what I propose is that Diaz definitively answers the jury unanimity question. Therefore, this court should cease at that point, not look at the structure of the statute, not look at the charging instruments, and find that the statute is indivisible because it contains subsections that do not require the use of force. Now, Diaz, you were saying, was dealing with the prior version of the statute? Correct. Okay, so under, when you look at 3.05 and the way the legislature has set these out, you have the list of aggravators, and then at the end of the overall list, the legislature says certainly certain ones of these under Illinois law would have greater sentencing effects. It seems to me that in and of itself creates the obligation for unanimity if you have some of these have to be proven independently by themselves in order for those enhancements to apply under Illinois law. That's not what state law holds. You know what the statute says, sir? Here's the current statute that we have is a consolidated statute that's swept into and under the umbrella the statute aggravated battery with a firearm, which was 12-4.2. It also swept in, back in 2011, 12-4.1, which was heinous battery and has now become A2, 12-4.2, which was the aggravated battery with the firearm case, which became E, and the effect of sweeping in these separate statutes was to create a single umbrella statute where all aggravated batteries can be charged under different and various manners and means. The legislature can alter prior law by its revisions. What I'm talking about is the tail end of 3.05, and it says aggravated battery as defined in E1, and that will be just one way to commit it. There's a class 10, I guess is what the X means, felony. Aggravated battery under A2 is something else. So you have this list. I'll admit F1 is not one of those, but it's a suggestion that these are independent elements in the way to charge and convict under the aggravated battery. I disagree with the Court. I believe that each and every subsection, A through G, I believe every subsection, A through G, lists a separate manners and means, and the evidence of that is that these are aggregated from what were previously separate crimes. That's what happened in Cherry. They were separate crimes. But what do you make of the tail end of the statute? You haven't responded. I didn't hear that. What do you make of that part of the statute, F, I've already forgotten, under 3.05? Good question, Judge. What do you make of the tail end of that, which I've been referring to when Illinois itself says certain sentencing effects occur depending on which one of those subparts the conviction occurs under? Here's what I take from that. When the legislature consolidated the statutes under an umbrella statute, they also brought with them the different penalty provisions that existed in those separate statutes at the time. The other thing... Counsel, when was the defendant convicted? Was he convicted after the statute was changed in Illinois? Yes, Judge. He was convicted. The conviction in our case is 2015. All of the cases that analyze the previous version of this statute, I have not found a single case that analyzes this statute. This is a new issue for this court. Lastly, Judge, with respect to the F subsection, if the court were to find that A through G were divisible, F is not necessarily divisible. And within F, we have alternatives, wearing a hood, wearing a robe, recording the simple battery is sufficient to aggravate it, and using a gun sight device. None of those would, with maybe the exception of the gun sight device, fall under the use of force. And with respect to harm, the court did not calculate a guideline range. We are under the Ibarra-Luna standard. Thank you. May it please the court, Loretta Berry for the United States. As Reyes correctly states, the only issue before this court is whether Illinois aggravated battery is divisible after Mathis. This court's prior holding before Mathis, in Velasco, used the modified categorical approach. And this is still good law, still correct approach after Mathis, as recognized by the Seventh Circuit in Lynn, which evaluated Illinois law and held that the statute was divisible after Mathis. But doesn't Lynn just look at the battery part and not the aggravated? It looks at causing great bodily harm versus whatever the other is? That's all Lynn discusses, is it not? Lynn talks about, as the first step being the battery, yes, that's correct. The first step being the battery and never really addresses the later elements. But for the discrete issue that the appellant has raised here, which is, is the statute even divisible? Lynn is important for that point because it states that it is. But does it state that 3.05 is divisible? The specific current statute that we have right now? No, it only evaluates the prior statute. But does it evaluate the then existing list of aggravators as opposed to just focusing on the two ways to commit battery? It just focuses on the battery and it lists that subpart 8. In the opinion itself, it lists the definition of battery, which is disjunctive. And it also says subpart 8, which is battery on a public way. It doesn't really evaluate whether that is an element of the statute or not. Isn't that our issue? Our issue is whether the statute is elements. That's correct. But I believe that it's an important opinion because it was one of the circuit cases that was rendered after Mathis that said that the statute as a whole is divisible. I don't know that that was particularly challenged that subpart. That doesn't address whether F is divisible. Within F, what's your best case that within F is divisible? My best case within F is divisible is actually the instruction of Mathis itself, which instructs the district courts to look to state case law. And if that is unclear, to look to the structure of the statute. Now, state case law in 2016, the Illinois Supreme Court looked at the statute. And granted, it was the old version of the statute. But as the court noted, it's been in Lynn. It's been subsequently renumbered. But the Supreme Court of Illinois looked at the statute and characterized it as elements-based. Actually used the word elements with respect to battery and those aggravating factors. And under this court's holding in the way that a highest state court has classified a disjunctive statute as a title of defense. What's your response to his argument that if they charged him with battery, with using a firearm, and wearing a hood? Now, is that two different offenses or not? I say not. Now, what's your case that says it's two offenses? Well, I don't have an exact case on that, Your Honor. But applying Mathis as this court must, the court has to look. Well, of course we must. And what is your authority that if they charged that he was wearing a hood, that the jury would have to find separately? My authority, Your Honor, is looking to the structure of the statute. That is my authority. And the structure of the statute supports divisibility. It is not a mere red herring, as Reyes suggests in his brief. Well, Counsel, the structure, if I might, because I want you to, I think you're on the right track, but let's make sure what you're saying. F itself says offense based on the use of a weapon or device. A person commits aggravated battery under F, when in committing a battery, the separate part, he does any other following. And it lists, as Judge Owen has asked, the hood, the machete would go on a deadly weapon. There are two other ways. This really sounds like means for which unanimity is not required. Except that, Your Honor, the case law in Cherry, the 2016 case from the Illinois Supreme Court categorized those aggravating factors as elements in that opinion. And under your rebate, that is entitled to deference. Well, there are a lot of meanings of elements. The Supreme Court say when we say elements, we mean what the federal courts look at when we're trying to determine under Mathis whether they're elements or means. I mean, words like elements and prongs and sections, those things are tossed around. And looking at the Supreme Court case, I didn't get that they mean elements in a way that's necessary for you to convince us the word is the meaning of the word. If there is some tension between that, Your Honor, what the district court, and I think that it's unclear, and if it is, the district court is entitled to look at the structure of the statute. As you noted, Judge Southwick, that each subpart defines a distinct offense, beginning with the phrase, in command of matter. I'm just not convinced that the Illinois court, if they had alleged he was wearing a hood when this happened, would require the jury to separately find that he was discharged a firearm and separately, unanimously agree, he was wearing a hood. Well, then the court would have to look to the, if that, if what you're saying, Your Honor, is that the state law is unclear and the structure of the statute is unclear, then Mathis instructs the district court to examine the Sheppard approved record documents. No, we only do that once we determine the statute's divisible. We don't get to the documents until the statute is divisible. I thought, I apologize. The documents don't decide whether the statute's divisible or not. They help the district court determine No, you decide whether the statute's divisible, then you can consult the documents to see which subsection he was charged with. I read Mathis to instruct that if the district court was unable to determine definitively if the case law and structure of the statute was unclear, the court would be permitted to look at the documents to assist its determination in whether they were elements or means. And in this case, the indictment and certificate, certified order of probation, specifically limited to F1, to the exclusion of all other subparts of F, which is a very strong indicator. What's the pattern jury charge in Illinois? I don't, I don't have the pattern jury, I don't recall the pattern jury charge. I don't, I did not put that in my brief, Your Honor. I don't really know that the, I believe it is in the other, in the Abilese brief. But very critical to this case, Your Honors, is the notion that the district court was keenly aware of the nuances of this divisible statute. The court reset the sentencing hearing to allow Reyes to file his objections and to supplement the record with the state court documents and with this statute itself. So by the time of sentencing, the court was very aware of this multi-layered statute, beginning with a battery, a simple battery in Illinois, which is disjunctive, followed by subsections A through G, which lists different offenses, followed by subsection H, which gives different penalties and different punishment ranges for the subsections A through G, and even within those subsections. Okay, are there different punishments within F? No, Your Honor, there are not. However, before the court even pronounced sentence, she spent a full three pages of the nine-page sentencing transcript discussing specific 3553A factors, and those are nature of the offense. The court was greatly concerned with the fact that Reyes attacked his girlfriend with a machete on the shoulder, striking her on the shoulder. The court was concerned with protecting the community. By the time of sentencing, at the age of 35, Reyes had committed three DWI convictions at the ages of 28, 29, and 32. The court was also concerned with deterrence and stated that the DWIs and violence to Reyes's girlfriend, meaning the December machete attack, there was also a January beating. At record page 81, the court announced on the record that she believed her rulings on the objections were correct, but in the event they were not, the court again mentioned the 3553A factors. The court specifically selected a five-year sentence, 60 months, that was not at the high end of the range, was not at the low end, or even the medium end of the range. She tied the sentence exclusively to the 3553A factors, and under this court's holding in Shepard and Castro Alfonso, this court takes the district court at its clear and plain word that it would have imposed the same sentence, adamant in the air. But the district judge didn't actually say that, did it? That I would have, I would, if I'm incorrect or if the sentencing guidelines are incorrect, I would still impose this sentence. She didn't say anything that specific, did she? The only objection before the court was whether or not this statute was divisible, and the court did say at record 81 that she believed her ruling was correct, but if not, she again mentioned those factors. And under Shepard, this court recognizes that the district court need not say any specific magic words, but that the court, the appellate court, takes the district court at its clear and plain word. If there are no further questions, I respectfully request that the judgment be affirmed. Thank you. I rise solely to address the harm issue and to point out that the prosecutor in this case specifically requested that a sentence be tied to the guideline. The prosecutor asked for a sentence at the mid to high end of the, what we contend is the incorrect guideline. And then in asking for that sentence, went through many of the facts that the court then used or stated in imposing its own sentence. At record 79, the prosecutor said, we ask this court to consider a mid-range or high-end sentence in this matter. And after going through the factors in the case, said we would ask to deter further criminal conduct and protect the public, that he be sentenced to a mid or high-end range. The court then sentenced Mr. Reyes, not exactly to a mid-range, but three months above the low end of the, what we say is the incorrect guideline range, which is about halfway between what the prosecutor was asking for and the low end of the guideline range. The court also said. The judge could have been more explicit. I think those comments can be read in a way in which the government argues here. Is it just not specific enough? I mean, you're giving us some factual considerations as to what seemed to be driving the sentence, but the language that was used is pretty close to the sort of thing that we have said shows harmless error. It is pretty close judge, but it is not harmless error. And it's not harmless error because the government cannot affirmatively and convincingly show that the sentence is completely divorced from the incorrect guideline range. The court in fact said. She said in the event that the court is in error in any of its rulings, I nonetheless believe that this is a case that based on history and this is the sentence I'm going to give, that's pretty clear to me that she thought, even if I've made an error in any of my rulings, this is the sentence I'm picking. Two issues, judge. One is there was no correct guideline range before the court. How many different factors were there in choosing the, what were the determinative factors? What else besides this enhancement would have made a difference in the guidelines range? I don't know that anything else would have made a difference. That's my point. The only ruling that made any difference in the guideline range was the enhancement. Correct. And she said in the event I'm in error, I'm still picking this sentence. I understand. However, the government must do more than that. The government must affirmatively demonstrate that the incorrect guideline was not influenced in any way. And they requested a within guideline range. The court said, I am going to send you within the guideline range as I have determined it to be. At best, it's equivocal. And that's not enough for the government to meet its burden. Also, at record 148, the statement of reasons, the judge marked that the sentence is within the guideline range. If you have no further questions, I have nothing further to say. Thank you.